In the Matter of ISIS FOODS, INC., Debtor.

**ELECTRICAL ASSOCIATION OF MISSOURI AND KANSAS, Petitioner,**

v.

**QUALITY HILL ASSOCIATES, Respondent.**

**Bankruptcy No. 82–00209–3–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Nov. 2, 1984.

Richard T. Brewster, Jr., Brewster & Brewster, Kansas City, Mo., for petitioner.

J. Scott McCandless, Shook, Hardy & Bacon, Kansas City, Mo., for respondent.

ORDER DENYING PETITIONER'S MOTION TO SET ASIDE ORDER OF FEBRUARY 9, 1984, CONFIRMING TRUSTEE'S SALE TO RESPONDENT

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the respondent, a purchaser of property at a sale from the trustee in bankruptcy, seeks to have the sale set aside. The motion of the petitioner, filed on August 1, 1984, requests that the court vacate and set aside its order of February 9, 1984, granting the trustee's application to sell property of the estate located at 1300–1306 Pennsylvania Avenue, Kansas City, Jackson County, Missouri. In support of the motion then filed, the petitioner stated that its offices are adjacent to the property which was sold by the estate; that "movant has previously attempted to purchase this property from Isis Foods, Inc., without success"; that it "learned of the proposed sale to Quality Hill Associates only within the past week"; that it "offers to purchase the Isis property for the total sum of $49,500 cash"; that "said offer is substantially higher than the sale price of $45,000 contained in the proposed sale to Quality Hill Associates, which was the subject of Trustee's Application for Authorization to Sell and this Court's order granting the Application, dated February 9, 1984"; and that, "it would be in the best interests of the Estate for the Court to set aside its order dated February 9, 1984, in order to allow the Trustee to accept new bids for the Isis property."

The court convened its hearing on the motion on September 6, 1984, whereupon the petitioner and respondent appeared by respective counsel. It was then a subject of testimony by John S. McDermott, the executive vice president of the petitioner, that the petitioner had on several occasions attempted to purchase the subject property from Isis Foods, Inc.; that on June 1976, their first offer was made for the property in the sum of $42,500; that the then officers of Isis Foods, Inc., rejected their offer; that they later attempted to purchase the

property on the courthouse steps at a tax sale, but were outbid by Isis Foods, Inc.; that at one time the petitioner was advised by Isis Foods, Inc., that the property might be sold for a sum in the vicinity of $60,000 and then, while still considering this potential price, was told that, because of an impending foreclosure, nothing was being done with the property; that petitioner's last contact with the real estate agency was in summer of 1983; that the subject property consists of a vacant lot next door to the petitioner's premises; that the petitioner accordingly has attempted continually to evince an interest in purchasing it, but was never notified of the proposed sale by the bankruptcy trustee until after it had already been approved by the court. A "for sale" sign continued to stand on the property throughout the period of time and past the time of February 9, 1984, when the sale to Quality Hill Associates was approved by the court, but the petitioner was not advised of the existence of the proposed sale to Quality Hill Associates until late July 1984. The testimony and evidence otherwise adduced is that the sale to Quality Hill Associates which was approved by the court's order of February 9, 1984, is ready to close and will be closed upon the court's ruling on the petitioner's motion to set aside the order of February 9, 1984, unless the order is not set aside. There is no evidence from which the court would be justified in drawing an inference that there was any conscious effort by the trustee or the realtor retained by the trustee to market and sell the property did anything to keep the petitioner from making an effective bid on the property. It might now be suggested that the information given by the realtor in July 1983 to the effect that a foreclosure was pending and nothing was therefore being done with the property forestalled a possible bid by the petitioner. But there is no evidence that this information, if false, was anything but innocent misinformation. While a bid of the petitioner may have been chilled through negligence or mistake, there is no evidence that it was done deliberately. The procedures for accepting bids appear to have been ordinary and normal.

It has been noted that, in order to set aside a bankruptcy sale which has already been confirmed by the court, where there is a "greater emphasis upon finality" than a timely attack upon proposed confirmation, the movant must demonstrate that the sale or contract is "tinged with fraud, error, or similar defects which would in equity affect the validity of any private transaction." *In re General Insecticide Co.*, 403 F.2d 629, 630–31 (2d Cir.1968). In this case, there is no allegation that the notice requirements were not met under the governing bankruptcy procedural rules. It is only stated and shown that the petitioner was, through some negligent misinformation, forestalled from making a timely bid and that the petitioner now proposes to make a bid some $4,500 higher than that for which the sale was confirmed. This hardly suggests that the price for which the sale was confirmed is inadequate. There are thus no "compelling equities" which would justify the setting aside of an approved sale. "In limited circumstances, confirmed sales (or orders involving other vested rights) have been properly set aside by the confirming court in the absence of the type of fraud or error referred to in *General Insecticide* ... These cases lead us to conclude that, although the policy of finality normally protects confirmed sales from orders to set aside, sales are properly set aside when compelling equities outweigh the interest in finality." *Matter of Cada Investments*, 664 F.2d 1158, 1162 (9th Cir.1981). In one such case, *In re Time Sales Finance Corp.*, 445 F.2d 385 (3d Cir.1971), cert. denied sub nom *Gross v. Walsh*, 405 U.S. 917, 92 S.Ct. 940, 30 L.Ed.2d 786 (1972), it was said that "innocent mistake" could provide a ground for setting aside an order confirming a sale, where the trustee's attorney failed to notify a bidder of the confirmation hearing. In this case, however, the petitioner, at the time of the confirmation, had not been a bidder. Nor had its failure to bid been achieved or procured, as noted above, by any untoward actions of the trustee or the realty firm which he had retained to adver-

tise and sell the property. It seems to the court that continual inquiry by the petitioner—as opposed to the few isolated inquiries which were made under apparently unusual circumstances—would have resulted in the disclosure that the property was really for sale during the period up to February 9, 1984, when the "for sale" sign remained on the property. As the matter stands in this case, up until the filing of the petitioner's motion to set aside the foreclosure sale, the trustee could have had no knowledge of petitioner either as a bidder or a potential bidder.

The set of facts with which the court is presented in this case is that a potential bidder who did not make any bid according to the usual and ordinary procedures employed by the trustee and the realtor engaged by him now wishes to make a bid some $4,500 higher than that for which the sale was confirmed by the order of February 9, 1984. Under such circumstances, the demands of finality clearly outweigh any equitable circumstances which may support the setting aside of the order of confirmation. It is therefore

ORDERED that the petitioner's motion to set aside and vacate the order of February 9, 1984, confirming the sale to respondent be, and it is hereby, denied.