**In re UNIVERSITY AVENUE PROPER-
TIES, University Hill Plaza, Hill
Street Properties, Debtors.**

**Bankruptcy Nos. 82–04393 to 82–04395.**

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 3, 1986.

Roger G. Schnitzler, Madison, Wis., for debtors.

Gaar W. Steiner, Milwaukee, Wis., for FMC, creditors.

Denis P. Bartell, Madison, Wis., for BDB, Investors.

William J. Rameker, Madison, Wis., for Opitz Realty, trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Before this court is a twofold application filed by University Avenue Properties, University Hill Plaza and Hill Street Properties, all of which are limited partnerships (collectively referred to herein as "debtors") seeking: (1) to set aside the confirmed sale of the University Hill Plaza Shopping Center to BDB Investors ("BDB"), a general partnership, and (2) to remove Opitz Realty, Inc. ("Opitz Realty") as trustee. Although the application was filed in the name of the debtors, it is clear from the record that the moving force behind this application is Byron L. Frenz, the sole general partner of each of the debtor limited partnerships. The other partners are all limited partners and consist of Dr. Louis C. Bernhardt, Dr. Phillip A. Dibble and Dr. William T. Brodhead. These limited partners are also the general partners of BDB and are actively opposing this application. For reasons more fully recited hereafter and based upon a review of the files, records and proceedings and upon the testimony received during four days of evidentiary hearings, this court denies the application in its entirety.

## FACTS

On October 6, 1982, a voluntary petition under Chapter 11 of the Bankruptcy Code was filed by the debtors in the Bankruptcy Court for the Western District of Wisconsin. Thereafter, these proceedings were transferred to this court. The Chapter 11 proceedings are a continuation of a bitter dispute previously being fought in a state court action commenced by the limited partners against Frenz seeking his ouster as general partner and also seeking damages based upon claims of mismanagement by him.

On October 29, 1982, in accordance with a stipulation, this court appointed Opitz Realty, a realty management firm, as trustee in the Chapter 11 proceedings.

The debtors owned a shopping center known as "University Hill Plaza" and located at 3313 University Avenue, Madison, Wisconsin. This shopping center contains several small shops, a delicatessen, a Chinese restaurant and a beauty salon. It now contains a sports medical and rehabilitation center known as the "Sports Medicine Clinic" that is a part of the University of Wisconsin. It is the Sports Medicine Clinic lease, entered into after University Hill Plaza was sold to BDB, which has triggered the pending application. This lease encompasses a five year term from February 1, 1984 through January 31, 1989. It covers approximately 7,000 square feet of leased space at an annual rental of $42,480 for the first year with gradual annual rent increases reaching $49,560 in the fifth year. In December, 1983, the Board of Regents of the University of Wisconsin approved this lease, and it was thereafter signed by the Governor.

Before the sale to BDB, Opitz Realty, as Chapter 11 trustee, rented, managed and also made several attempts to sell the shopping center. At a hearing before this court on May 19, 1983, Opitz Realty presented an offer by BDB to purchase all of the debtors' assets. The offer was opposed by Frenz, and the court declined to approve the proposed sale. Instead, it instructed Opitz Realty to actively market the shopping center pursuant to a 90 day exclusive listing contract. A listing price of $1,900,-000 was established. The listing contract provided for a commission to Opitz Realty

of 5% in the event of any sale (except in the event of a sale to any insider, including the limited and general partners of the debtors, in which case there would be no commission paid). At the May 19, 1983 hearing, Frenz requested and was granted the right to obtain, at his cost, an appraisal of the shopping center from American Appraisal Company.

On September 12, 1983, another hearing was held to consider three separate offers, given to Opitz Realty, to purchase the shopping center. One offer came from BDB, a second from Michael Laskis and a third from Robert Lehman. In addition, Frenz presented a plan of reorganization which contemplated a four month period to obtain investors to purchase the improvements for $1,475,000 under a land contract together with an option to purchase the land for $175,000. At the September 12, 1983 hearing, the court was informed that Frenz had not acquired the American Appraisal Company appraisal he previously requested. Kenneth Opitz, president of Opitz Realty, testified that, based upon his analysis of the three offers and the Frenz reorganization plan, the BDB offer represented the best of the alternatives, and he recommended its approval. The BDB offer provided for assumption by BDB of all outstanding liens and encumbrances (totalling approximately $1,090,000[1]) and also provided for the creation of a cash fund of $418,167.72 to be used to pay all allowed claims of unsecured creditors on a pro rata basis. In arriving at his recommendation, which was reached after consultation with his counsel, Kenneth Opitz was cognizant that the BDB offer provided for assumption of certain obligations for which the partners of BDB were already personally liable. He also took into account a number of other factors, including the contingencies in both the Laskis and Lehman offers and the conditional nature of the Frenz reorganization plan which Kenneth Opitz viewed as a "marketing plan" and which he did not consider to have any substance as

of the time his recommendation was made. There were no objections to the BDB offer by Frenz or by anyone else. Moreover, Attorney Roger Schnitzler, the debtors' attorney, acknowledged that the BDB offer fairly met many of Frenz's objections. The court confirmed the sale to BDB, but expressed concern that the mailing matrix which had been prepared by Frenz was incomplete and directed Frenz to prepare an updated matrix. The court also ordered that all omitted creditors be given an opportunity to object to the sale. An interim order was entered on September 30, 1983 scheduling a hearing for October 20, 1983 for the omitted creditors to present any objections.

On October 20, 1983, Kiefer Corporation, a party who had not received prior notice, appeared and objected to the sale. The objection was not directed at the sale to BDB, but was concerned instead with the status of Kiefer Corporation as a secured or unsecured creditor for purposes of dividend distribution. When this dispute was resolved, Kiefer Corporation withdrew its objection. Frenz also appeared at the hearing and orally objected to the sale, stating that he had been misinformed as to the terms of the sale to BDB, believing that the sale was limited only to the real property. Testimony was then taken, after which the court entered an order overruling Frenz's objection for several reasons including: (1) a lack of standing by Frenz to object under the terms of the court's September 30, 1983 interim order which specifically limited the right to object to those creditors previously omitted from the matrix; (2) a finding that the terms of the BDB offer clearly recited that both real and personal property were included; and (3) a finding that the personal property had only a nominal value and little or no impact on the decision of the court to confirm the sale to BDB. An appeal taken by Frenz of this order was dismissed on March 27, 1984

---

1. The precise amount of the liens and encumbrances is unknown because it in turn depends upon whether certain liens against the real estate are valid. As of the present time, this is still an open question.

for lack of prosecution. On December 30, 1983, the sale to BDB was completed[2].

This provides the background leading up to the pending application in which it is alleged that:

"Opitz Realty knew of the possibilities of the University leasing space, yet intentionally neglected to mention this to the court on October 20, 1983, for the purpose of defrauding the creditors and lowering the sale of the property to BDB Investments."

At the evidentiary hearings, Frenz attempted to prove that Opitz Realty had failed to disclose to the court the status of discussions with the University of Wisconsin relative to possible leasing of space, had failed to disclose the existence of a right of first refusal granted by Opitz Realty to the University of Wisconsin and had misrepresented to the court that the shopping center had been operating at a loss. It is the position of Frenz that Opitz Realty, as trustee of the estate, owed a fiduciary duty to the debtors and creditors alike and that its pattern of conduct constituted a breach of its fiduciary duty requiring both the setting aside of the sale of the shopping center to BDB and the removal of Opitz Realty as trustee.

## APPLICATION TO SET ASIDE CONFIRMED SALE

In determining if the confirmed sale should be set aside, certain fundamental principles must be recognized. The standard for setting aside a sale is stricter than the standard for rejecting a proposed sale. *In re General Insecticide Co.*, 403 F.2d 629 (2d Cir.1968). In the latter situation, the governing principle is to obtain the best price for the bankruptcy estate whereas in the former there is a greater emphasis upon the need for finality in judicial sales and executed contracts. They should not be upset unless tinged with fraud, error or similar defects which would in equity affect the validity of any private

transactions. *In re Todem Homes, Inc.*, 51 B.R. 883 (Bankr.S.D.N.Y.1985). *Collier on Bankruptcy* (14th Ed., § 70.98[17]) asserts:

"Proceedings to set aside cannot be set in motion for reasons other than defects of such gravity to 'shock the conscience of the chancellor' and even irregularities of a quite serious kind that might have been, but were not, asserted in the confirmation proceedings are definitely lost and cannot be used as a ground for the request to set aside."

A recent Seventh Circuit ruling adopts the view that the setting aside of an order confirming a sale involves different concerns and less discretion on the bankruptcy judge's part than the denial of a sale in the first instance and that the decision of the court to set aside a confirmed judicial sale in bankruptcy is an extraordinary one to be exercised only in very limited circumstances. *Matter of Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir.1985). *See also, Matter of Whitney-Forbes, Inc.*, 770 F.2d 692 (7th Cir.1985). In *Matter of Chung King, Inc.*, *supra*, the court concluded that the circumstances in that case did not involve the type of fundamental errors or compelling equities which would justify setting aside a confirmed sale when balanced against the competing policy of protecting finality in judicial sales in bankruptcy proceedings.

In applying these principles to the case at bar, the evidence presented does not come close to "shocking the conscience" of this court. There are no fundamental errors or compelling equities involved. All that has been advanced in support of the application is sheer conjecture. While this arguably may be sufficient to raise doubts, it fails to meet the quantum of proof needed to establish fraud or a breach of fiduciary duty on the part of Opitz Realty. The court has had an ample opportunity to observe both Kenneth Opitz and Robert Krolnik, a broker employed by Opitz Realty, and was impressed by their

2. The sale was completed during the pendency of the appeal, Frenz having made no request for a stay of the sale pending the appeal.

demeanor. Opitz Realty has been in the real estate business in Madison, Wisconsin for well over 30 years and enjoys an excellent reputation. It has been involved in many dealings with the State of Wisconsin and with the University of Wisconsin. The recommendation made by Kenneth Opitz at the September 12, 1983 hearing was objective, sincere and in good faith.

The applicants have placed too much emphasis on the right of first refusal given by Opitz Realty to the University of Wisconsin. Kenneth Opitz testified that a right of first refusal was a common technique frequently utilized by his company. Of greater significance is the provision in the listing contract that no commission is to be paid in the event of a sale to the partners of the debtors. The recommendation of Kenneth Opitz for approval of the sale to BDB actually worked against his company's financial interest. A sale to either Laskis or Lehman would have resulted in a substantial commission in excess of $67,000 being paid to Opitz Realty, whereas the sale to BDB resulted in no commission.

The decision by Kenneth Opitz and Krolnik not to inform the court of a possible interest by the University of Wisconsin in leasing space or of the existence of a right of first refusal given to the University of Wisconsin was not made with any ulterior motive. It was purely a business judgment call. Krolnik testified that as late as the October 20, 1983 hearing, discussions with representatives of the University of Wisconsin were not far enough along to be noteworthy, that he estimated the chances of a consummated lease as of that time at not more than 25%, and, in his opinion, revealing the interest shown by the University of Wisconsin could well have jeopardized any chances of acquiring this lease. While other trustees under similar circumstances might have reacted differently, Opitz Realty will not be faulted for the actions taken by its representatives. The role of a court in applying hindsight to a business judgment was discussed in *In re Curlew Valley Associates,* 14 B.R. 506, 513 (Bankr. D.Utah 1981) where Judge Mabey stated:

"In short, the court will not entertain objections to a trustee's conduct of the estate where the conduct involves a business judgment made in good faith upon a reasonable basis, and within the scope of his authority under the Code."

It is unclear whether or not University Hill Plaza was operating at a loss at the time of the sale to BDB. According to Frenz and Theodore F. Gunkel, a financial analyst retained by Frenz to evaluate the various alternatives, the shopping center was viable and self-sustaining at the time of the sale. On the other hand, according to the testimony of the limited partners (and in particular Dr. Bernhardt) as well as the testimony of Kenneth Opitz, the limited partners were required to fund the operation of the shopping center on a monthly basis in order for the debtors to meet both operating expenses and debt service. Regardless of whether the shopping center was operating at a loss or was self-sustaining at the time of the sale, the court is satisfied that the representations made by both Kenneth Opitz and Krolnik, were either true, or if erroneous, were believed by both to have been true and not made to deceive the court or anyone else.

*In re Transcontinental Energy Corp.,* 1 B.R. 460 (Bankr.D.Nev.1979) (aff'd 683 F.2d 326, 9th Cir.1982) is a case in point. In that case, the bankruptcy court declined to set aside a sale despite efforts by the applicants to convince the court of the existence of collusion between the debtor's president and the purchaser and of a breach of duty on the part of the debtor's president in concealing the true value of the partnership interest being sold. The court, in refusing to void the sale, stated:

"Unsubstantiated hypotheses and groundless innuendos, no matter how sinister their appearance, are not adequate substitutes for the sort of clear and convincing exhibition of fact required to set aside a confirmed sale by a trustee in bankruptcy."

Frenz's assertions suggesting the existence of a conspiracy between Opitz Realty and BDB and the concealment of information and misrepresentations by Opitz Realty are

unsupported by the evidence. The court specifically finds that there was no conspiracy between Opitz Realty and BDB and that Opitz Realty at all times has acted in good faith and without any intent to defraud. Accordingly, it declines to rescind the confirmed sale to BDB.

## APPLICATION TO REMOVE TRUSTEE

Removal of a trustee is governed by 11 U.S.C. § 324 of the Bankruptcy Code which states that a court "after notice and a hearing may remove a trustee ... for cause." The use of the word "may" in this statute leads to the conclusion that such removal is discretionary. There also is no statutory definition of "cause" which can only be defined on a case-by-case basis depending on the facts of the particular case. *Collier Bankruptcy Practice Guide* (1985) Vol. 2, § 29.02.

The portion of the application which seeks to remove Opitz Realty as trustee rests upon the same allegations that were made in the attempt to set aside the confirmed sale. Because the court has determined that there was no fraudulent conduct by Opitz Realty, the basis for removal of Opitz Realty as trustee has also been eliminated. Where the court believes that a trustee has not willfully and deliberately breached his fiduciary duties to the estate but has instead utilized his discretion in exercising business judgment, there is no cause for removal. *In re Hartley,* 50 B.R. 852 (Bankr.N.D.Ohio W.D.1985). The evidence fails to substantiate fraud or any other improper conduct by Opitz Realty, and the court accordingly denies the application to remove Opitz Realty as trustee.[3]

## SUMMARY

This application is another attempt by Frenz to convince the court that the sale should never have occurred and should be set aside. No fraud or other misconduct by Opitz Realty has been established. The undisclosed information was not of such import as to justify setting aside the sale. Even if it had been revealed, it would have had no effect upon the court's order confirming the sale to BDB.

Frenz has made repeated efforts to reverse the sale. On May 19, 1983, in response to his objection, the court withheld approval of the sale to BDB and ordered the property to be offered for sale on the open market. On October 20, 1983 Frenz again objected to the sale to BDB, but this time his objection was denied. His appeal of the court's October 20, 1983 ruling was dismissed for want of prosecution. The present application, under the guise of alleged misconduct by Opitz Realty, is in fact just one more attempt on his part to undo this sale. The court has carefully considered the evidence presented at these many hearings and finds no basis for setting aside the sale.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

**3.** As a practical matter, the application to remove the trustee has become moot, because Opitz Realty is no longer performing any substantial duties as trustee since the sale of the shopping center to BDB.