**In re Michael Kevin JAMES, Sandra Louise James, Debtors.**

No. 96–40018–2.

United States Bankruptcy Court, W.D. Missouri.

Jan. 3, 1997.

450

Robert D. Lantz, for Roosevelt Bank.

John Lewis, Jr., Chapter 7 Trustee.

Peter A. Jouras, Jr., for Debtors.

Joyce B. Kerber, for Thomas and Judith Brown.

## *ORDER*

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the Motion to Vacate Orders Confirming Sale of Real Property and Approving Auctioneer's Commission and Expenses of Sale filed by Roosevelt Bank. For the following reasons, the Court denies the motion.

## Facts

On or about February 17, 1995, Michael and Sandra James (the "Debtors") executed a note in favor of Roosevelt Bank in the amount of $116,550.00 for the purchase of real estate commonly known as 11805 South Cave Road, Lone Jack, Missouri 64070 (the "Property"), which was comprised of four tracts of land. In order to secure payment of the note, the Debtors executed and delivered to Roosevelt Bank a deed of trust dated February 15, 1995, whereby they conveyed as security the following described real estate: "LOT 4, COUNTRY PLAINS, 2ND PLAT, LOTS 4 THRU 7, A SUBDIVISION IN JACKSON COUNTY, MISSOURI." Roosevelt Bank filed this deed of trust in the Office of the Recorder of Deeds for Jackson County, Missouri on February 21, 1995. At some point in time, Roosevelt Bank realized that the deed of trust conveyed as security only one of the four tracts of land purchased by the Debtors. On December 19, 1995, Roosevelt Bank re-recorded the deed of trust, which conveyed as security the following described real estate:

TRACT I: LOT 4, COUNTRY PLAINS, 2ND PLAT, LOTS 4 THRU 7, A SUBDIVISION IN JACKSON COUNTY, MISSOURI

TRACT II: LOT 8, EXCEPT THE SOUTH 396.13 FEET THEREOF, COUNTRY PLAINS, LOT 8, A SUBDIVISION IN JACKSON COUNTY, MISSOURI

TRACT III: THE NORTH 80.70 FEET OF LOT 5, COUNTRY PLAINS, 2ND PLAT, LOTS 4 THRU 7, A SUBDIVISION IN JACKSON COUNTY, MISSOURI

TRACT IV: THE NORTH 80.70 FEET OF LOT 7, COUNTRY PLAINS, 2ND PLAT, LOTS 4 THRU 7, A SUBDIVISION IN JACKSON COUNTY, MISSOURI.

On January 3, 1996, the Debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code. In their bankruptcy schedules the Debtors valued the Property at $135,000.00. An appraisal conducted on January 16, 1995, valued the Property at $140,000.00. An appraisal conducted on September 7, 1996, valued the Property at $149,900.00 for a 90 to 120 day sale, and valued the Property at $135,000.00 for a "quick sale." Roosevelt Bank filed a proof of claim asserting a fully secured claim in the amount of $118,712.46. The Chapter 7 Trustee, the Debtors, and Roosevelt Bank believed that the value of the Property exceeded the balance due under the February 17, 1995, note.

On July 26, 1996, the Trustee filed a notice of intent to sell the Property free and clear of liens. The notice was mailed to all creditors of record including Roosevelt Bank. The notice stated that the Trustee intended to sell the Property to the highest bidder at an auction to be held on August 8, 1996, at 6:00 p.m. at the location of the Property unless objections were filed with the bankruptcy court by the twentieth day following the date of the notice. Roosevelt Bank does not dispute that it received notice of the Trustee's intent to sell the Property. No objections were filed to the proposed sale. Specifically, Roosevelt Bank did not object to the proposed sale.

The Court approved the employment of Tom Lindsay as auctioneer pursuant to section 327 of the Bankruptcy Code. The terms of Lindsay's employment provided that he would receive a fee of 5% of the gross sales price of the Property plus all reasonably incurred out-of-pocket expenses, including advertising, which were not expected to exceed $1000.00.

Prior to the auction, Lindsay advertised the Property by flyer, which was mailed to an extensive list of prospective purchasers throughout the metropolitan Kansas City area. Lindsay advertised the Property in at least two newspapers of general circulation including the Kansas City Business Journal. Lindsay entertained a number of inquiries concerning the Property in the weeks leading up to the auction and showed the Property both by appointment and conducted an open house on the day of the auction.

The auction proceeded as scheduled. *No one appeared at the auction on behalf of Roosevelt Bank.* Thomas F. and Judith A. Brown (the "Browns") were the highest bidders with a bid of $105,000.00.

On September 23, 1996, the Trustee filed an application for an order confirming the sale of the property. On that date the Trustee also filed an application to approve Lindsay's commission in the amount of $5250.00 and expenses of sale in the amount of $998.82. Notice of both applications was mailed to Roosevelt Bank.

On September 24, 1996, the Court entered an order confirming the sale of the Property. In the order the Court determined that notice of the proposed sale was accurate, appropriate, legally sufficient and reasonable under the circumstances and in accordance with applicable Bankruptcy Code provisions and Bankruptcy Rules; that both the Trustee and the Browns acted in good faith with respect to the sale; that there was no evidence of improper conduct or motive by any party with respect to the sale; that neither the Trustee, Lindsay nor the Browns colluded with any person, firm or entity, or in any manner violated the provisions of section 363(n); and that the sale of the Property satisfied the requirements of section 363(f) of the Bankruptcy Code. The Court authorized and directed the Trustee and the Browns to execute and deliver all documents, instruments and agreements and to take all actions necessary or desirable to complete the sale of the Property. On that same date the Court also entered an order allowing Lindsay's commission and expenses of sale in the total amount of $6248.82.

Roosevelt Bank, not realizing that the Court had already entered orders confirming the sale of the Property and approving the auctioneer's commission and expenses of sale, filed on October 1, 1996, a combined objection to the application for an order confirming the sale of the Property and the application to approve the auctioneer's commission and expenses of sale. On October 2, 1996, Roosevelt Bank filed a motion to vacate the orders confirming the sale of the Property and approving Lindsay's commission and expenses of sale. Because the Court has entered the orders confirming the sale of the Property and approving the auctioneer's commission and expenses, the Court will treat the combined objection as supplemental to the motion to vacate and the Court's ruling on the motion to vacate is intended to encompass the combined objection as well.

Roosevelt Bank seeks to vacate the confirmation order on the basis that prior to the sale it was an oversecured creditor but because the highest bid at the auction was only $105,000.00, Roosevelt Bank has been forced to become an undersecured creditor of the estate with the unsecured portion of its claim exceeding $10,000.00. Roosevelt Bank argues that the sale did not benefit the estate and places the unsecured creditors in a much less favorable position than if the auction had never taken place.

Roosevelt Bank seeks to vacate the order approving the auctioneer's commission and expenses on the grounds that Lindsay's fees and expenses did not benefit the estate or Roosevelt Bank under section 330(a)(3)(C) of the Bankruptcy Code, and were not reasonably likely to benefit the estate or were not necessary to the administration of the estate pursuant to section 330(a)(4)(A) of the Bankruptcy Code. Roosevelt Bank argues that it is clear from the appraisals of the Property that the Property is worth more than $105,000.00 and, therefore, the auction should never have been completed in light of both the amount due under the note and the value of the Property. Roosevelt Bank asserts that because the Trustee decided to proceed with the sale, the unsecured creditors and Roosevelt Bank are in a significantly diminished position. Roosevelt Bank also argues that the auctioneer's fees and expenses cannot be charged against the sale proceeds because it has an interest in the Property that cannot be impaired in bankruptcy.

After a hearing was held on Roosevelt Bank's combined objection and motion to vacate, the Court took the matter under advisement. While reviewing the case file, the Court discovered that Roosevelt Bank had re-recorded the deed of trust within ninety days of the Debtors' bankruptcy filing to take a security interest in all four tracts of the Property in lieu of the one tract of real estate that was conveyed as security in the original deed of trust. In light of the Court's discovery that the Trustee has a potential preference action against Roosevelt Bank under 11 U.S.C. § 547(b), the Court held a

status conference on November 14, 1996, between the Court, the Trustee and counsel for Roosevelt Bank. The Trustee and Roosevelt Bank advised the Court that they wanted time to settle the matter. The Trustee and counsel for Roosevelt Bank expected to complete the settlement negotiations by December 23, 1996. The Court agreed to postpone ruling on the matter until that time. On December 16, 1996, counsel for Roosevelt Bank requested until the end of December to accomplish settlement. The Trustee agreed that more time was need to settle the matter. The Court agreed to the extension of time.

On January 2, 1997, different counsel for Roosevelt Bank (original counsel has left the firm) requested that the Court extend the time to settle the matter to January 31, 1997. Counsel for Roosevelt Bank was unable to contact the Trustee before requesting this extension of time. The Court informed counsel for Roosevelt Bank that it would not grant the request for additional time. This matter has been delayed for a far greater period of time than it should have been. The Court has given the parties ample time to settle the matter. The Court has been advised that the Browns have a buyer for their home and believes that the Browns should no longer be left in limbo. It is time for the Court to rule and allow everyone to get on with their lives and the Trustee to wind up the affairs of the estate.

*Discussion*

1. *Confirmation of the sale of the Property*

■ Section 363(b)(1) of the Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The trustee may sell property under section 363(b) free and clear of any interest in such property of an entity other than the estate if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; *or* (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f). The five conditions enumerated in section 363(f) are disjunctive and, as such, a sale thereunder can be authorized if the trustee can prove the existence of any one of the five conditions. *In re Shary*, 152 B.R. 724, 725 (Bankr.N.D.Ohio 1993).

Further, section 363(k) of the Bankruptcy Code provides that at the sale of the property a secured creditor may bid in the full amount of the creditor's allowed claim, both the secured portion and the unsecured portion, with respect to the property that is subject to the lien that secured the allowed claim. By allowing a secured creditor to credit bid at the sale, the Bankruptcy Code provides the creditor with an additional resource that the creditor may choose to utilize in order to protect its interest in the property being sold.

In this case, section 363(f)(2) is satisfied because Roosevelt Bank failed to object to the proposed sale of the Property. By failing to object to the sale, Roosevelt Bank implicitly conveyed its consent to the sale for purposes of satisfying section 363(f)(2). *See Shary*, 152 B.R. at 725. *See also In re Elliot*, 94 B.R. 343, 345–46 (E.D.Pa.1988) (implied consent by secured creditor's failure to object to a proposed sale of property is sufficient to authorize a sale under section 363(f)(2)).

■ The condition found in section 363(f)(5) also has been satisfied here. In *In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 462 (E.D.Mich.1995), the district court stated that "it is clear that Section 363(f)(5) allows trustees of an estate to sell property free and clear of liens when 'a legal or equitable proceeding' exists that will force the lien holder to accept less than full money satisfaction for their interest." "Under Section 363(f)(5), 'equitable considerations may allow a court to approve a sale free and clear of liens even though the creditors receive less than full satisfaction of their interests.'" *Id.* (quoting *In re Heine*, 141 B.R. 185, 189–90 (Bankr. D.S.D.1992)). In this case, the Trustee has a potential cause of action against Roosevelt Bank to avoid as a preferential transfer the conveyance of the three tracts of land that

were included in the re-recorded deed of trust. Under the particular circumstances of this case the potential section 547 cause of action qualifies as a "legal or equitable proceeding" that could force Roosevelt Bank to accept less than full money satisfaction for its interest in the Property. Although the Trustee has not actually filed the preference action, there is no doubt in the Court's mind that a ruling in favor of Roosevelt Bank on the motion to vacate will prompt the Trustee to quickly file such an action.

Additionally, "[t]he law is clear that a confirmed sale is not to be set aside except under the limited circumstances where fraud, mistake or a similar infirmity is present." *In re Furst*, 57 B.R. 1013, 1015 (E.D.Pa.1986). *See also Elliot*, 94 B.R. at 346; *In re University Ave. Properties*, 55 B.R. 986, 989 (Bankr. E.D.Wis.1986); *In re Isis Foods, Inc.*, 47 B.R. 14, 15 (Bankr.W.D.Mo.1984). "A sale of real estate approved by the bankruptcy judge should not be set aside unless fraud or mistake can be proven." *Furst*, 57 B.R. at 1016. " '[i]f parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.' " *Id.* (quoting *In re Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir.1985)).

"The standard for setting aside a [confirmed] sale is stricter than the standard for rejecting a proposed sale." *University Ave. Properties*, 55 B.R. at 989.

> In the latter situation, the governing principle is to obtain the best price for the bankruptcy estate whereas in the former there is a greater emphasis upon the need for finality in judicial sales and executed contracts. They should not be upset unless tinged with fraud, error or similar defects which would in equity affect the validity of any private transactions.

*Id.* " 'The policy of finality protects confirmed sales unless "compelling equities" outweigh the interests of finality.' " *Elliot*, 94 B.R. at 346 (quoting *Chung King*, 753 F.2d at 550).

In this case, the equities against setting aside the confirmed sale are compelling. The Trustee and Roosevelt Bank thought that there was value in the Property. Roosevelt Bank does not deny that it received notice of the Trustee's intent to sell the Property at public auction. Roosevelt Bank did not file an objection to the proposed sale. Roosevelt Bank impliedly consented to the proposed sale by its failure to object. Roosevelt Bank failed to protect its interest by sending someone to the auction to credit bid the amount of its allowed claim if necessary. The original deed of trust contained an improper legal description, Roosevelt Bank could not have foreclosed under the original deed of trust, and the deed of trust was re-recorded within ninety days of the bankruptcy filing which exposed Roosevelt Bank to a potential preference action. The Browns bid in good faith at the auction and the Browns' bid was fair. The Court finds that the ultimate fault lies with Roosevelt Bank in allowing the sale to proceed. Roosevelt Bank could have protected its interest by objecting to the proposed sale or appearing at the sale to credit bid, but chose not to take either action. Here, the Court finds no evidence of fraud, mistake or a similar infirmity in the sale of the property. The Court finds only inaction on the part of Roosevelt Bank. Roosevelt Bank cannot sit back and do nothing, then complain after the sale that the price bid is too low.

Roosevelt Bank argues that the auction did not benefit the estate and that the unsecured creditors are in a much less favorable position than if the auction had never taken place. Roosevelt Bank also complains that because the appraised value of the property exceeded the highest bid, Roosevelt Bank and the unsecured creditors of the estate are in a significantly diminished position as a result of the sale. As addressed above, Roosevelt Bank brought about its own position by its inaction. The Court will not engage in speculation concerning the alleged less favorable or diminished positions of the unsecured creditors of the estate. No creditor objected to the proposed auction. Further, endless scenarios exist about what could have happened at the auction to affect the unsecured creditors. Roosevelt Bank could have credit bid at the sale for the amount of its allowed claim, which would

have left nothing for unsecured creditors; or the highest bid could have been the equivalent of the amount due under the note and the amount allowed the Debtors for their homestead exemption, which likewise would have left nothing for unsecured creditors. No one can predict with any accuracy what will occur at an auction. This Court has previously found that the proposed sale of the Property was properly noticed, that the Trustee and the Browns acted in good faith in regards to the auction, and that there was no evidence of improper conduct or motive or collusion by any party with respect to the sale. Roosevelt Bank has failed to present any evidence that the auction was conducted fraudulently or in any manner that would violate section 363 of the Bankruptcy Code, and absent such a showing, the Court will not vacate the order confirming the sale. *See Elliot,* 94 B.R. at 346. The Court will deny the motion to vacate the sale of the Property.

2. *Order approving auctioneer's commission and expenses of sale*

■ Section 330(a)(1)(A) and (B) of the Bankruptcy Code provides that after notice and a hearing the bankruptcy court may award to a professional person employed under 11 U.S.C. § 327 reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses. Section 330(a) further states that:

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

. . . . .

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

. . . . .

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

. . . . .

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(3) and (a)(4).

This Court finds that the services of the auctioneer were necessary to the administration of the estate, and that the services of the auctioneer benefited the Debtors' estate. The heart of Roosevelt Bank's complaint is that the highest bid received at the auction was less than the amount due on the note, which rendered Roosevelt Bank undersecured when the sale was confirmed. However, as discussed above, Roosevelt Bank did not object to the proposed sale of the Property and Roosevelt Bank failed to send someone to represent it at the auction and credit bid if necessary.

■ Apparently, the only way the Trustee will be able to pay the auctioneer is from the proceeds of the sale. Roosevelt Bank argues that its interest in the proceeds of the sale cannot be impaired by payment to the auctioneer. However, in this particular situation the Trustee has a potential preference cause of action against Roosevelt Bank, which in all likelihood would result in the avoidance of Roosevelt Bank's security interest in three of the four tracts of land if pursued by the Trustee, and it appears to the Court that Roosevelt Bank does not have an interest in all of the proceeds of the sale. Because it appears to the Court that Roosevelt Bank only has a partial interest in the proceeds of the sale, the Court believes that it is fair and proper to pay the auctioneer from the sale proceeds, and to pay the Trustee's fee from the sale proceeds. After these administrative expenses have been paid, the Trustee shall deliver the balance of the sale proceeds to Roosevelt Bank. The Court will deny Roosevelt Bank's motion to vacate the order allowing the auctioneer's commission and expenses of sale.

*Conclusion*

Based on the above discussion, the motion to vacate the Court's orders confirming the sale of the real property and approving the auctioneer's commission and expenses of sale

is DENIED. The Court directs the Trustee and the Browns to proceed in accordance with the order confirming the sale of the Property that was entered on September 24, 1996. The Court further directs the Trustee to pay the auctioneer's commission and expenses of sale and to pay the Trustee's fee from the sale proceeds and to deliver the balance of the sale proceeds to Roosevelt Bank.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.