In re Thomas A. ROBERTS, f/d/b/a/
Barry's Party Store, f/d/b/a
Prince's Market, Debtor.

No. HK 99–00569.

United States Bankruptcy Court,
W.D. Michigan.

May 22, 2000.

Alexander C. Lipsey, Kalamazoo, MI, Chapter 7 Trustee.

Eric C. Lund, for Huntington Bank.

## OPINION

JEFFREY R. HUGHES, Bankruptcy Judge.

A trustee may sell property of the estate free and clear of a lien if the lienholder consents. 11 U.S.C. § 363(f)(2). The question before the Court is whether a lienholder's consent may be implied if the lienholder does not object to the proposed sale after appropriate notice. The Court concludes that the consent required by Section 363(f)(2) [1] may not be implied from the lienholder's failure to object. The lienholder must actually give its assent.

## I. BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 26, 1999. The Chapter 7 estate includes a parcel of real property located in Milton Township, Cass County, Michigan (the "Property"). The Property

is encumbered by at least four different liens. The lienholders of record are Huntington National Bank N.A. ("Huntington"), Barry E. and Patricia A. Mead (the "Meads"), Harjit Singh Dhillon (a/k/a Hargit Dihlon Singh) ("Dhillon"),[2] and the C.A. Murphy Oil Company, Inc. ("Murphy Oil").

The Chapter 7 Trustee, Alexander C. Lipsey ("Trustee"), entered into a buy-sell agreement with R.M.J. Corp. of Indiana to purchase the Property from the bankruptcy estate for $125,000.00. On March 21, 2000, Trustee filed his motion requesting the Court to authorize the proposed sale. The motion also requests that the Property be sold free and clear of all liens, including the lien of Huntington, the Meads, Dhillon and Murphy Oil.

According to the motion, Huntington holds the first priority lien in the Property. Huntington's lien secures a claim against the Debtor in excess of $230,000. The motion did not disclose the amounts owed to the other lienholders. Nonetheless, it is clear that the bankruptcy estate has no equity in the Property and the Trustee concedes as much.

■ Trustee's incentive for selling property with no apparent value to the estate is a side agreement with Huntington whereby Huntington will turn over $5,000 from the proceeds it anticipates receiving from the sale as a "carve out" for the benefit of the estate. Huntington's reason for making this arrangement is presumably to avoid the necessity of having to eliminate the interests of the junior lienholders through the much lengthier state foreclosure process.[3]

---

1. For purposes of this opinion, "Section _____" shall mean the pertinent section of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2. Trustee's motion indicates that there is some confusion as to Dhillon's actual name ("Harjit Singh Dhillon" or "Hargit Dihlon Singh") and his current address. For purposes of its decision, the Court has assumed that Dhillon received proper notice of the Trustee's motion to sell the Property free and clear of his lien.

3. Under Michigan law, a senior lienholder must foreclose junior liens and other interests through a court supervised proceeding unless foreclosure is permitted through advertisement. M.C.L.A. §§ 600.3101 et seq. and 600.3201 et seq. The culmination of the foreclosure is the public sale of the property. In most instances, the senior lienholder is the successful bidder since there are few third parties who are willing to pay fair value for property subject to these redemption rights.

Trustee served the sale motion upon all creditors, including the Meads, Dhillon and Murphy Oil. The notice which accompanied the motion indicated that the Court would hear the Trustee's motion on April 20, 2000. The notice also directed any party-in-interest who wished to respond to the proposed sale to file its response in writing with the clerk's office for this Court no later than three business days before the April 20, 2000 hearing date.

Trustee presented his motion to the Court at the April 20, 2000 hearing and Huntington appeared in support. The Meads filed a timely response objecting to the sale and appeared at the hearing. However, the Trustee and Huntington advised the Court at the hearing that the Meads' objection had been resolved by Huntington's agreeing to carve out another $10,000.00 from its anticipated distribution for the benefit of the Meads. The Meads have now withdrawn their objection.

Dhillon and Murphy Oil did not file responses. Nor did they appear at the April 20, 2000 hearing. When asked by the Court whether Dhillon and Murphy Oil had given their assent to the proposed sale, the Trustee reported that they had not. Instead, the Trustee took the position that both of these lienholders had implicitly consented to the sale of the Property free and clear of their interests because of their failure to object to the sale in writing or to otherwise appear in opposition at the April 20, 2000 hearing. Neither the Trustee nor Huntington offered any basis other than this implied consent under Section 363(f)(2) as authority to sell the Property free and clear of Dhillon's and Murphy Oil's liens.

## II. *JURISDICTION*

The Court has jurisdiction over the Trustee's proposed sale pursuant to 11 U.S.C. § 1334(a) and L.Civ.R. 83.2

(W.D.Mich.). This matter is a core proceeding and therefore the Court's decision is a final order subject to review under Section 158 of Title 28. 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(N). The following sets forth the Court's conclusions of law as required by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure. In making these conclusions, the Court has relied upon the Trustee's motion to sell the Property in question together with the documents filed in support of that motion. The Court has also considered the brief filed by Huntington in support of Trustee's motion. There were no contested facts which required a finding by this Court.

## III. *DISCUSSION*

For purposes of this decision, the Court assumes as true all of the pertinent information contained in Trustee's motion. Specifically, the Court assumes that Huntington in fact holds a valid, first priority lien in the Property, that Huntington's debt secured by that lien is substantially in excess of the value of the Property, and that both Dhillon and Murphy Oil received proper notice of the Trustee's intention to sell this Property free and clear of their liens. The question which the Court now decides is simply whether Dhillon's and Murphy Oil's failure to appear or otherwise object to the proposed sale is the equivalent of "consent" under Section 363(f)(2) so as to authorize the sale free and clear of their liens as proposed.

Section 363(f) reads as follows:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, **only if—**

(1) applicable non bankruptcy law permits sale of such property free and clear of such interest;

---

Thereafter, the junior lienholders are given an additional period of time (anywhere between one month and one year) to redeem the prop-

erty from the successful bidder. M.C.L.A. §§ 600.3140 and 600.3240.

(2) **such entity consents;**

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. ‐

11 U.S.C. § 363(f). (Emphasis added).

There is no indication within Section 363 itself or its underlying legislative history that Congress intended "consents" to have any meaning other than that which it is commonly understood to have. "Consent," when used as a verb, means "to give assent or approval." *Webster's* Third New International Dictionary (unabridged) (1986).

▆▆▆ Trustee and Huntington have relied upon the legal artifice of implied consent to meet the requirement of Section 363(f)(2). However, their argument in reality is that "consents" and "fails to object" are synonymous. They are not. When a person consents to a particular action, that person has unequivocally manifested his or her affirmation of the proposed action through some discernable statement or act. In contrast, when a person fails to object to a proposed action, that person's affirmation can only be deduced from the lack of any statement or act which would suggest a contrary position. Obviously, such deductive reasoning always leaves open the possibility that the person's failure to object is attributable to some reason totally unrelated to that person's actual consent to the proposed act. For example, in the context of mass mailings to the creditor matrix, the person may have mistaken an important notice for junk mail and tossed it into the trash without even have read it.

Had Congress substituted "does not object" for "consents" in Section 363(f)(2), there would be no question that the lienholder had the obligation to act if it did not want the property to be sold free and clear of its lien. However, the concept of consent (*i.e.,* **to give assent**) imposes no such duty upon the lienholder. To the contrary, "consent" obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien.

The Court recognizes that Congress intended to facilitate the administration of bankruptcy cases by permitting various activities to be pursued without an actual hearing provided that there was appropriate notice and an opportunity to be heard. The phrase "after notice and a hearing," which is interspersed throughout the Bankruptcy Code, including Section 363, contemplates this expedited procedure. 11 U.S.C. § 102(1)(B). However, Congress was quite specific as to what "after notice and a hearing" was to mean. Section 102(1) states that:

(1) "After notice and a hearing," or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) **such a hearing is not requested** timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

\*\*\*

11 U.S.C. § 102(1). (Emphasis added).

In other words, Section 102(1)(B)(i) requires a party who opposes a proposed action to request a hearing. However, no such duty can be implied from the common meaning of the word "consent." If a party's consent is a prerequisite to proceeding with a proposed action, then that party should not have to request a hearing or

otherwise object if it does not want the action to occur. Its silence should be sufficient.

The Court suspects that the confusion as to what constitutes consent for purposes of Section 363(f)(2) is in part due to the requirement that all sales of estate property outside the ordinary course, including sales free and clear of liens, must be authorized by the court after notice and a hearing. 11 U.S.C. § 363(b). It is tempting to conclude that Section 363(b) imposes upon the lienholder the same obligation that any other party-in-interest has to come forward and object if it disagrees with a proposed sale. However, Sections 363(b) and 363(f) address entirely different issues. Sections 363(b) and (c) both dictate the circumstances under which the trustee is generally authorized to use or dispose of the estate's property. In contrast, Section 363(f) sets forth the circumstances under which the trustee may have the additional authority to sell the property free and clear to the purchaser.

▆▆▆▆ Although a sale of estate property free and clear of liens may be desirable, it is not necessary. Nothing within Section 363(b) prevents the trustee from selling encumbered estate property outside the ordinary course subject to those encumbrances, provided that proper notice is given and no party-in-interest (including any lienholder) makes a timely request for a hearing. However, if the trustee wishes to sell the property free and clear of those encumbrances, then the trustee must not only secure court authority under Section 363(b), but also must secure the affected lienholder's consent or meet one of the requirements of Section 363(f).

Section 363(c)(2) well illustrates Congress's clear intention to distinguish between securing authority based upon notice and an opportunity to be heard and

securing authority based upon consent. That section states that:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>> (A) each entity that has an interest in such cash collateral consents; or
>> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Congress clearly envisioned two distinct scenarios when it enacted this subsection. The trustee may negotiate a cash collateral arrangement with the affected lienholders. If all of the lienholders consented (*i.e.*, gave their assent), the proposed use would be authorized without any intervention by the court. However, Congress also recognized that a debtor's post-petition cash needs can be both significant and immediate. If a creditor's consent were the only way a trustee could secure the requisite authority to use that creditor's cash collateral, then an obdurate creditor could hold the trustee hostage. Therefore, Congress provided the trustee with the alternative method of notifying all of the affected lienholders and giving them the opportunity to be heard if they objected.

▆▆▆ Congress's juxtaposition of the word "consents" and the phrase "after notice and a hearing" in Section 363(c)(2) establishes beyond doubt that these are two separate and distinct concepts. Put simply, a trustee is authorized to use in the ordinary course a creditor's cash collateral if either the lienholder consents or the court authorizes the use after notice and a hearing. Indeed, the court may authorize the use of the creditor's cash collateral even if the creditor affirmatively indicates that it is withholding its consent (*i.e.*, the creditor objects) if the creditor can be adequately protected. 11 U.S.C. § 363(e).[4]

---

4. The Court would note that Section 363(c)(2) is consistent with the dichotomy between Sections 363(b) and (c) and Section 363(f) which

the Court has already discussed. Section 363(c)(2), like the remaining portion of Section 363(c) and Section 363(b), concerns the

Huntington argues that every published opinion and the leading bankruptcy treatises support the Trustee's and its contention that the consent required by Section 363(f)(2) may be implied by the lienholders' failure to object after notice. *See, Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345–46 (E.D.Pa.1988); *In re James*, 203 B.R. 449, 453–54 (Bankr.W.D.Mo.1997); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr.D.N.J. 1994); *In re Shary*, 152 B.R. 724, 725–26 (Bankr.N.D.Ohio 1993); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr.W.D.La.1985); *Lawrence P. King, et al.*, 3 Collier on Bankruptcy ¶ 363.06[3] at 363–45, 46 (15th Ed.1999); *William L. Norton, Jr.*, 2 Norton Bankr.L & Prac.2d § 37.22 n. 40 (1999 suppl.). The Court agrees that these cases and treatises support Huntington's and the Trustee's position. However, the Court chooses not to follow these authorities for the reason that they offer no good rationale for ignoring the clear language of Section 363(f).

Most of the cited authorities offer nothing more than the conclusory statement that consent may be implied and one or more citations to support that proposition. For example, the Norton treatise cites without critical analysis three of the cases cited above, *In re James*, *In re Elliot* and *In re Shary*. These three cases in turn cite other cases for the same proposition but offer no independent analysis of their own. In fact, when the genealogy of all these authorities is completed, it turns out that the common ancestor for all of these cases and treatises is *In re Gabel, supra*.

The apposite language in *Gabel* is as follows:

circumstances under which the trustee has authority to use estate property. While Section 363(c)(2) may permit the trustee to use a creditor's cash collateral over the creditor's objection, Section 363(c)(2) does not authorize the trustee to sell that cash collateral free and clear of a creditor's lien. That authority must be based upon Section 363(f).

Having previously determined that Pelican was properly noticed, I need now only decide if this failure to object, according to the clear terms of the notice, should be viewed as "consent" within the meaning of Section 365(f)(2). My own reading of the law and the jurisprudence in this area leaves me with the firm belief that this is exactly the legal effect that must be given to such a failure to object. Indeed I find the case law to be replete with examples of courts finding consent based upon such facts; to cite but a few: *In re Torchia*, 188 F. 207; *In re Tele–Tone Radio Corporation, etc.*, 133 F.Supp. 739; *In re Pioneer Sample Book Company*, 374 F.2d 953; *In re Hotel Associates, Inc.*, 6 B.R. 108. Some courts have recently pointed out that under the new rules where there is a failure to object, no further court blessing of the sale is required as the trustee is empowered, by that fact alone, to act. *In re Hanline*, 8 B.R. 449 (Bankr.N.D.Ohio 1981); *In re Frank Meador Buick, Inc.*, 8 B.R. 450 (Bankr. W.D.Va.1981). Reiterating, I find that Pelican is estopped to deny its implied consent at this late stage. Accordingly, I find that the trustee's sale has complied with the provisions of Section 363(f).

*In re Gabel*, 61 B.R. at 667.

*Gabel*, however, is not directly on point. The court in that case certainly stated that a secured creditor's consent for purposes of Section 363(f)(2) may be implied from the creditor's failure to object to the proposed sale. However, the court made this observation almost a year after the sale had been closed based upon a free and clear order issued by that very same court. What the court finally found was that "Pel-

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
***

11 U.S.C. § 363(f). (Emphasis added)

ican is **estopped** to deny its implied consent **at this late stage.**" *Id.* (Emphasis added).

■ In the instant case, this Court is not confronted with the problem of having to set aside a sale order which has already been consummated. Rather, the Court itself has raised this issue before any order was entered.[5] One can only speculate how the court in *Gabel* would have decided the issue had it not been burdened by a previously issued order upon which a third party purchaser had clearly relied.

Moreover, the cases upon which the court in *Gabel* relied in reaching its conclusion that the consent required by Section 363(f)(2) may be implied have nothing to do with sales of estate property. The cases instead addressed the question of whether the trustee could surcharge its expenses against proceeds realized from the sale of a secured creditor's collateral over the secured creditor's objection. Indeed, three of the four cases cited by the court in *Gabel* were old Bankruptcy Act cases and therefore did not even address the issue in the context of the current Bankruptcy Code and its comprehensive scheme.

Section 506(c), which is the current codification of a trustee's authority to surcharge, offers no support for the conclusion that Congress intended the failure to object to substitute for consent when it enacted Section 363(f)(2). Nowhere within Section 506(c) does the word "consent" appear. In sharp contrast, Congress not only used the word "consent" when it enacted Section 363(f)(2), but is also contrast-

ed that word with the separate concept of "after notice and a hearing" in the very same section. Therefore, reliance on cases interpreting Section 506(c) are not very persuasive and cases addressing pre-Code surcharges are even less persuasive.

Moreover, other case law interpreting Section 506(c) suggests that a secured creditor's consent to a Section 506(c) surcharge may not be implied from that creditor's failure to object. For example, the Second Circuit limited a secured creditor's "implied" consent to the imposition of a surcharge to those instances where the creditor actually caused in some way the expense to be incurred. *General Electric Credit Corporation v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10, 12 (2nd Cir.1985). Similarly, the Eighth Circuit upheld the bankruptcy court's imposition of a surcharge against the secured creditor based upon its conclusion that the creditor had actually consented to the debtor's continued operation in the Chapter 11 proceeding. *U.S. v. Boatmen's First National Bank of Kansas City*, 5 F.3d 1157, 1160 (8th Cir.1993) *overruled by In re Hen House Interstate, Inc.*, 177 F.3d 719 (8th Cir.1999), *and cert. granted,* —— U.S. ——, 120 S.Ct. 444, 145 L.Ed.2d 361 (1999). *See also, J.A.M. Co. v. Schindler (In re Salzman)*, 83 B.R. 233, 240 (Bankr. S.D.N.Y.1988) (holding that a secured creditor's consent to a surcharge could not be implied even when the secured creditor had not only supported the trustee's sale of its collateral but also had expressly consented to the sale free and clear of its lien).

---

**5.** The Court believes that it is quite appropriate for it to have raised this issue *sua sponte,* particularly in light of the conclusion reached in *In re Gabel.* The secured creditor is caught in a virtual catch–22. As already noted, Section 363(f)(2) by its very terms does not require a lienholder to actually object to a sale in order to withhold its consent to the sale free and clear of its lien. However, if the creditor does not object and if it also does not file a motion to modify the sale order within the time prescribed by Fed.R.Bankr.P. 9023, the creditor is effectively barred from later

objecting to the improperly granted order. In other words, the rules and policies which favor the finality of orders compel the secured creditor to object to a sale free and clear of its lien notwithstanding the fact that Section 363(f)(2) imposes no such duty to do so. While in most instances the Court will defer to the actual parties-in-interest as to when and how bankruptcy laws are to be enforced in a specific case, the Court has no compunction interceding in this instance, particularly given the fact that property rights are affected by the proposed sale.

The Court's own notions as to appropriate policy should not affect its interpretation of the unambiguous language contained in Section 363(f)(2). However, the Court does observe that its decision addresses what would appear to be a concerted effort by Huntington to circumvent the Michigan foreclosure laws concerning real property. The Trustee does not claim any equity in the Property. Indeed, based upon Trustee's motion, it would appear that the value of the Property is substantially less than what is owed to Huntington. Yet Huntington has agreed to "carve out" $5,000 from the anticipated sale for the estate's benefit.

Obviously, Huntington has not offered this money to the Trustee out of a sense of charity. In effect, what Huntington is doing is purchasing the estate's Section 363(f) powers so as to forego the time and expense required to foreclose Dhillon's and Murphy Oil's liens through a state proceeding. Under Michigan law, Huntington would have had to sell the Property through either a judicial or non-judicial proceeding and then allow the applicable redemption period to expire before the Property would be free and clear of all liens. Based upon the Court's own experience, such a process would normally take at least eight months. It is not surprising that Huntington would prefer a Section 363(f) sale to this alternative, particularly when a buyer is immediately available.

However, the Michigan legislature created the redemption rights attendant to a foreclosure sale for a purpose. A foreclosure sale, by its very nature, is not necessarily the best reflection of a mortgaged property's real value. Redemption rights at least partially offset this problem by giving all junior lienholders (as well as the fee owner) some period of time to redeem the property at the price paid at foreclosure. While it may be true that junior lienholders seldom exercise their redemption rights, this Court cannot ignore the fact that these rights would be eliminated in situations such as the instant case.

The Court does not mean to suggest that Huntington's effort to avoid the Michigan foreclosure laws through this proposed sale was in bad faith. However, given that Section 363(f)(2) specifically requires each lienholder's consent before property may be sold free and clear of its lien, the Court is constrained to deny approval of Trustee's sale of the Property as proposed.

The Court would also note that its decision does not altogether bar Huntington from expediting the state foreclosure process. Nothing prohibits Huntington from seeking out Dhillon or Murphy Oil and negotiating a "carve out" with them much as it did with the Meads and the Trustee. In fact, if one assumes that Huntington would have bought out Dhillon or Murphy Oil if either objected in the same manner it bought out the Meads when they objected, then even further doubt is cast upon Huntington's assertion that Dhillon's and Murphy Oil's consent can be implied from their failure to object. Had Huntington or the Trustee disclosed in the notice of sale that Huntington would be willing to negotiate a carve out with any lienholder who withheld its consent, the Court suspects that Dhillon and Murphy Oil might have been more aggressive in expressing their views concerning the sale.

## IV. *CONCLUSION*

For the reasons stated in this opinion, Trustee's proposed sale of the Property free and clear of **all** liens and encumbrances is denied. The Court will approve the sale free and clear of only the liens of Huntington and the Meads since they were the only lienholders who actually gave their consent under Section 363(f)(2). The Court will enter a separate order.