In re Michael J. COLARUSSO and
Mary Colarusso, Debtors.

Robert and Joan Canzano as They Are
Trustees of the J & B Realty
Trust, Plaintiffs,

v.

Mary M. Ragosa, Defendant.

Bankruptcy No. 99–19194–WCH.
Adversary No. 01–1446.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

July 16, 2002.

Jay F. Theise of Cherwin, Glickman & Theise, Boston, MA, for Robert and Joan Canzano as they are Trustees of the J & B Realty Trust.

Leonard M. Frisoli, Jr., of Frisoli & Associates, Cambridge, MA, Albert J. Schultz, Osterville, MA, for Mary M. Ragosa.

**MEMORANDUM DECISION REGARDING MOTION OF THE PLAINTIFFS, ROBERT AND JOAN CANZANO AS THEY ARE TRUSTEES OF THE J & B REALTY TRUST FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE JUDGMENT ON THE PLEADINGS PURSUANT TO BANKRUPTCY RULE 7056 AND F.R.C.P. RULE 56 AND MOTION OF DEFENDANT, MARY M. RAGOSA FOR SUMMARY JUDGMENT**

WILLIAM C. HILLMAN, Chief Judge.

I. *Introduction*

When the Chapter 7 Trustee, Donald R. Lassman (the "Trustee") sold the property located at 289 West Bay Road in Osterville, Massachusetts (the "Property") in a properly noticed sale, Robert and Joan Canzano, Trustees of J & B Realty Trust (the "Plaintiffs") were the successful bidders. After I entered an order approving the sale of the Property to the Canzanos free and clear of all liens, claims and encumbrances on June 29, 2001 (the "Order"), Mary M. Ragosa (the "Defendant") filed a complaint in the Land Court (the "Land Court Action") for the Commonwealth of Massachusetts seeking to establish a claim of adverse possession to a portion of the Property. The Plaintiffs then filed the present adversary proceeding seeking injunctive relief and enforcement of the Order based on a theory of judicial estoppel. Both the Plaintiffs and the Defendant have filed motions for sum-

mary judgment. For the reasons set forth below, I will enter a separate order granting the Plaintiffs' motion and denying the Defendant's motion.

## II. *Background*

Michael J. and Mary Colarusso (the "Debtors") filed for Chapter 13 relief on November 17, 1999. On March 15, 2000, the case was converted to one under Chapter 11 and on March 7, 2001, the case was converted to one under Chapter 7. At the time of filing the Debtors owned the Property. The Trustee filed a Motion of Chapter 7 Trustee for Order Authorizing and Approving Private Sale of Real Estate Located at 289 West Bay Road, Osterville, Massachusetts Free and Clear of Liens, Claims and Encumbrances (the "Motion") on May 14, 2001. The Trustee requested that I enter an order pursuant to, *inter alia*, 11 U.S.C. § 363(f).

The Motion contained the following language: "[T]he legal description for the Property is contained in the Standard Form Purchase and Sale Agreement that is attached hereto as **Exhibit 'A'** and is also set forth on the original deed into the Debtors and attached hereto as **Exhibit 'B'**". Motion, p. 1 (emphasis in original). Exhibit "A" referenced the three page meets and bounds description for the Property which was described in Exhibit "B". The description included the entire Property and did not exclude the portion at issue.

Further, the Motion stated: "[T]he Trustee proposes to sell the real estate to the party that submits the highest and best offer at the time this Motion is before the Court for approval free and clear of all liens, claims and encumbrances on the Property." Motion, p. 2. The Motion continued:

[T]he Trustee requests that the Court make the following findings in connection with the sale of the Property to the successful buyer:

 a. the sale of the Property to the successful buyer is to be made free and clear of all liens, claims, and encumbrances and other interests in the Property.

Motion, p. 2.

Finally, the Motion stated:

[W]HEREFORE, the Trustee requests that, in accordance with 11 U.S.C. Section 363(b) and (f), Fed. R. Bankr.P. 6004(a) and MLBR 6004–1(a), he be authorized to enter into a Purchase and Sale Agreement in the form attached hereto with the party that tenders the highest and best offer for the Property as and convey the Property pursuant to a Fiduciary Deed, free and clear of all liens, claims and encumbrances on the Property, with said liens, claims and encumbrances to attach to the proceeds generated by the sale in their pre-petition order of priority, together with such other and further relief as the Court deems just and proper.

Motion, p. 3.

Contemporaneously, the Trustee filed a Notice of Intended Private Sale (the "Notice") that proposed a sale of the Property to four different offerors: the Plaintiffs, the Defendant, Debra Fosci and Thomas Walko, and Scott E. and Adriana S. Crosby. The Notice stated:

[T]he Property, subject to the terms and conditions of sale set forth in the Sale Motion and the Agreement, will be sold free and clear of all liens, claims and encumbrances. Any perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

Notice, p. 1.

The Notice also listed June 25, 2001 as the deadline by which to file any objections to the proposed sale. No objections were filed by the deadline.

On June 29, 2001, I held a hearing at which the Plaintiffs and the Defendants both appeared and submitted sealed counter bids. The Plaintiffs were the successful bidders and I entered the Order. The Order stated:

Accordingly, it is hereby Ordered, Adjudged and Decreed that:

1. The motion is allowed and the Trustee is authorized and directed to sell, Transfer and convey the Property to the Buyers—Joan Canzano and Robert Canzano, Trustees of J & B Realty Trust u/t/d 9/1/92 for the Approved Price and on the terms and conditions stated in the Agreement.[1]

2. Such sale of the Property to the buyers shall be free and clear of any and all liens, claims and encumbrances on the Property and in accordance with 11 U.S.C. section 363(f),[ . . . ]

4. Having considered the Motion, the Agreement, the pleadings related thereto, and representations and arguments of counsel at the Hearing, the Court concludes that the Buyers have acted in good faith, at arms length, and without collusion, and are therefore purchasers in good faith within the meaning of 11 U.S.C. Section 363(m).

5. The recording of a certified copy of this Order in any appropriate Registry of Deeds shall be conclusive evidence of the transfer of the Property to the Buyers free and clear of any liens, claims, charges, interests and encumbrances asserted against the Property.

9. If Buyers fail to close, Trustee may complete sale to Mary Ragosa, Trustee of G.B.C. RE Trust.

Order, p. 2–3.

On July 2, 2001, the Trustee recorded a Trustees' Deed with an attached certified

copy of the Order. No appeal of the Order was taken or stay pending appeal requested.

On October 23, 2001, the Defendant commenced the Land Court Action against the Plaintiffs in the Land Court for the Commonwealth of Massachusetts, Case No. 275638, entitled Mary M. Ragosa, Plaintiff v. Joan Canzano and Robert Canzano Trustees of J & B Realty Trust, Defendants. In filing the Land Court Action, the Defendant sought a declaratory judgment confirming a claim of ownership to a portion of the Property via adverse possession (the "Adversely Acquired Parcel"). In connection with the Land Court Action, the Defendant filed and obtained, on an *ex parte* basis, a lis pendens, thereby clouding the Plaintiffs' title to the Property.

On November 6, 2001, the Plaintiffs filed a Complaint of Joan Canzano and Robert Canzano, Trustees of J & B Realty Trust to Enforce Court Order, to Confirm Vested Title and for Injunctive Relief (the "Complaint") as well as a Motion for Expedited Hearing. For Count I of the Complaint, the Plaintiffs wrote

[a]s a result of the Order of June 29, 2001, which entered without objection either to the Order, or the Motion from which the Order arose, the Defendant Ragosa is estopped and has waived her rights, if any she had, from any subsequent proceeding, including the Land Court Proceeding, to establish any preexisting claim and/or encumbrance or superior right to the Locus that was the subject matter of the Motion, Order, and Trustees' Deed.

Complaint, p. 7–8.

At the end of Count II of the Complaint, the Plaintiffs wrote

---

**1.** The Agreement referred to the Standard Form Purchase and Sale Agreement which

was attached to the Motion and incorporated therein by reference.

[w]herefore as a result of the conduct alleged above, the Plaintiffs are entitled to an Order from the Court with a declaration by this Honorable Court, that this Honorable Court has authority to enforce its orders, that the Court's Order of June 29, 2001 is in full force and effect, and that Ragosa cease and desist from further violation by immediately withdrawing the Land Court Proceeding, with prejudice, or face contempt charges from this Court.

Complaint, p. 9–10.

On November 8, 2001, the Plaintiffs filed a Memorandum of Law in Support of Preliminary Injunction. They requested that I enjoin the Defendant from any further prosecution of the Land Court Action. I held a hearing on November 8, 2001 and granted a preliminary injunction in favor of the Plaintiffs enjoining the Defendant from

taking any further action in the Land Court for the Commonwealth of Massachusetts in Case No. 275638 and from taking any and all other action with respect to the issue of title to a parcel of property popularly known as 289 West Bay Road, Osterville, Massachusetts, referred to as the locus in the above-captioned Complaint, until such further order of this Court.

Order, p. 2.

The Defendant filed a Motion to Dismiss Adversary Proceeding or Abstain (the "Motion to Dismiss") on November 30, 2001. The Defendant sought dismissal of the adversary proceeding pursuant to Fed. R.Civ.P. 12(b)(6) and 28 U.S.C. § 1334(c), arguing that the Plaintiffs failed to state a claim upon which relief could be granted or that the Court should abstain from hearing the matter as it lacked jurisdiction over the subject matter and the Defendant. Specifically, the Defendant asserted that the Adversely Acquired Parcel was acquired by the Defendant via adverse possession and consequently this portion was never a part of the Debtors' estate and thus could not have been included in the Motion. Additionally, the Defendant argued that if the Adversely Acquired Parcel was never part of the bankruptcy estate, this Court did not have jurisdiction over it and the Defendant was not required to raise any objection at the hearing on the Motion.

On December 21, 2001, the Plaintiffs filed an Opposition of Robert and Joan Canzano, Trustees of the J & B Realty Trust, Plaintiffs to the Defendant, Mary M. Ragosa's Motions to Dismiss (the "Opposition"). The Opposition reiterated the argument set forth in the Complaint which is that the Defendant is barred from asserting any interest in the Property due to her failure to raise the issue at or before the hearing held on the Motion based on a theory of estoppel.

On January 4, 2002, I held a hearing on the Motion to Dismiss. The Defendant argued that because the Plaintiffs owned a piece of property that abutted the Property and have driven by the Property on a frequent basis for the past 35 years, they had constructive notice of the Defendant's adverse possession. I found that there was no evidence presented regarding the adverse nature of the Defendant's use of the Property. Trans., p. 10–11. Additionally, I found, based upon the Defendant's failure to object to the Trustee's Motion, her participation in the sale of the Property and the detrimental reliance of the Plaintiffs on the actions of the Defendant, it was reasonable for me to conclude that the Defendant is now estopped from asserting her claim in the Property. Trans., p. 11–12. Because the Defendant failed to state grounds for which relief could be granted, I entered an order denying the Motion to Dismiss.

On March 4, 2002, the Plaintiffs filed Motion of the Plaintiffs, Robert and Joan Canzano as they are Trustees of the J & B Realty Trust for Summary Judgment or in the Alternative Judgment on the Pleadings, Pursuant to Bankruptcy Rule 7056 and F.R.C.P. Rule 56 ("Plaintiffs' Summary Judgement Motion"). The Plaintiffs reiterate the arguments set forth in the Complaint. On April 15, 2002, the Defendant filed a Motion of Defendant, Mary M. Ragosa for Summary Judgment ("Defendant's Summary Judgment Motion") and Defendant Mary M. Ragosa's Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and In Support of Defendant Mary M. Ragosa's Motion for Summary Judgment ("Defendant's Opposition").

In the Defendant's Opposition, the Defendant first argues that she is not estopped to claim adverse possession in the Adversely Acquired Parcel because she "has not, in any legal proceeding, asserted a position that is contrary to the position she now asserts in Land Court..." Defendant's Opposition, p. 5. Additionally, the Defendant contends, providing the theory of judicial estoppel was applicable in this instance, it would only be applicable to the Land Court Action and not the present action before this Court. The Defendant further argues that the Trustee could not and did not convey the Property free and clear of her claim of adverse possession. In fact, the Defendant contends that the "Trustee's deed did not convey any interest in the adversely acquired parcel, since this parcel was never a part of the Debtor's estate." Defendant's Opposition, p. 6.

Finally, the Defendant asserts

[t]his Court lacks subject matter jurisdiction over this adversary proceeding. The Debtors did not own any interest in the Adversely Acquired Parcel on the date the bankruptcy was commenced, the Trustee did not succeed to any interest in the parcel and thus, could not sell to the Canzanos any interest in the Adversely Acquired Parcel.

Defendant's Opposition, p. 6–7.

On April 19, 2002, I held a hearing on Plaintiffs' Summary Judgment Motion and Defendant's Summary Judgment Motion. After oral arguments, I received Plaintiffs' Supplemental Memorandum in Support of Their Motion for Summary Judgment or Judgment on the Pleadings (the "Plaintiffs' Supplemental Memorandum"). The Plaintiffs argue the Defendant consented to the sale by her conduct. The Plaintiffs state:

The Defendant Ragosa, having been named in the Trustee's Motion to Sell, and having actually participated in the proceeding, both in person, and by counsel, and having failed to object to the sale of the property in which the Defendant now claims an interest, and having actually bid to purchase the locus, by her conduct, and therefore constructively if not actually, consented to the sale of the locus, which included the portion that is the subject matter of the Defendant's present claim. This is particularly so, because the notice of sale was for a sale of the property by a metes and bounds description.

Plaintiffs' Supplemental Memorandum, p. 3.

The Plaintiffs also contend:

It is an obvious and inescapable conclusion that by her bid, the Defendant consented to the sale of the interest she now contends, since she sought to purchase the same by her very bid, thereby intending to acquire title (which she would have had she submitted the highest bid). In fact, the Court's Sale Order, entered on June 29, 2001 included, at the Defendant's request, paragraph 9, (to the recollection of counsel to the Plaintiffs handwritten by the Court from

the bench following the Defendant's request to the Court) which states that:

"9. IF BUYERS FAIL TO CLOSE, TRUSTEE MAY COMPLETE SALE TO MARY RAGOSA [ . . . ]"

Plaintiffs' Supplemental Memorandum, p. 4.

On May 15, 2002, the Defendant filed Defendant Mary M. Ragosa's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and In Support of Defendant Mary M. Ragosa's Motion for Summary Judgment ("Defendant's Supplemental Memorandum"). The Defendant argues two points. The Defendant's first argument is "[t]he land that Ragosa and her predecessors obtained title to by adverse possession (the 'Adversely Acquired Parcel') never became part of the debtor's estate and, therefore, said land could not be sold by the trustee in bankruptcy." Defendant's Supplemental Memorandum, p. 2. The Defendant's second argument is her adverse possession claim survived the sale and continues to attach to the property much like a right of way or an easement. "The sale of 289 West Bay Road pursuant to the bankruptcy court's order was subject to Ragosa's adverse possession claim." Defendant's Supplemental Memorandum, p. 3.

## III. *Analysis*

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, governs motions for summary judgment. Rule 56 provides that the judgment sought "shall be rendered if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The initial burden of proof is placed upon the moving party. *In re Wang Laboratories, Inc.*, 155 B.R. 289, 290 (Bankr.D.Mass.1993). To defeat the

motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact. *Darr v. Muratore*, 8 F.3d 854, 859 (1st Cir.1993); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The non-moving party bears the burden of demonstrating that at least one material fact is in dispute after the movant offers evidence of the absence of a genuine issue. *Id.* A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Federal Deposit Ins. Corp. v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir.1994) (*quoting Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993)).

### B. *Jurisdiction and Abstention*

■ The first issue I must decide is whether I have jurisdiction over the Property and the Defendant. 28 U.S.C. § 157(b)(1) states: "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 1334(b) further states: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The subject matter of this adversary proceeding is the validity and scope of the Order that I entered granting the Motion and approving the sale of the Property to the Plaintiffs. The First Circuit in *New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equipment & Marine, Inc.)*, 292 F.3d 61

(1st Cir.2002) ruled that such an order is a proceeding arising under, arising in or related to a case under title 11. Specifically it said that the "underlying dispute here involves a subsequent purchaser's interpretation of a sale order 'free and clear of liens' under 11 U.S.C. § 363(b), an order that can only be issued by a bankruptcy court, and so it is one that arises in a case under title 11 or perhaps arises under title 11." *Id.* at 68. Therefore, I have concurrent but not exclusive jurisdiction over this matter.

■ Additionally, since the jurisdiction is concurrent and non-exclusive, 28 U.S.C. § 1334(c)(1) allows for permissive abstention. That section provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). *See also In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d at 68 ("This case then allows permissive abstention.").

■ The decision to abstain rests on the consideration of three factors which are (i) the interest of justice; (ii) the interest of comity with State courts and (iii) respect for State law. *In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d at 68 *(citing Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.)*, 950 F.2d 839, 845 (2nd Cir.1991)). In *Middlesex Power Equipment & Marine, Inc.*, the First Circuit said

[t]he scope of the bankruptcy court's sale order under the Code is an issue of federal law, and, as such, is a factor that weighed against abstention. However, the bankruptcy court also considered other factor which weighed in favor of abstention. It took into account judicial economy and comity, when, in its first opinion, it noted that the issues between the parties had already been fully litigated in the Land Court, and in its second decision, it stated that "NEPM's motions essentially ask this court to review a final judgment of the state court."

*In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d at 69.

The Defendant's sole argument in support of abstention is that I lack jurisdiction. I have found that I do have jurisdiction over this matter. Moreover, in this case, since the Order is a bankruptcy court's sale order, it is an issue of federal law and thus this factor weighs against abstention. Further, the Land Court Action has not yet been heard thus the factors of judicial economy and comity weigh against abstention as well. Accordingly, since this Court has jurisdiction over orders which it has issued and has not been presented with grounds warranting abstention, I will decide the issues set forth in the Motions for Summary Judgment.

C. *Sale Free & Clear*

■ The Defendant argues that a sale "free and clear" under § 363 does not mean free and clear of non-monetary interests. Therefore, she asserts that her adverse possession claim survived the sale, relying on *In re Oyster Bay Cove, Ltd.*, 161 B.R. 338 (Bankr.E.D.N.Y.1993).

In that case, the court approved the trustee's application to sell land belonging to the debtor. Attached to the order for sale were approved terms and conditions of the sale which provided that the property was to be sold subject to, *inter alia*, any covenants, restrictions and easements of record. The property was sold and the successful bidder subsequently defaulted on completing the sale claiming that because there were title defects the trustee

was not able to deliver marketable title. The trustee claimed that the items on the title report that the successful bidder referred to as defects were in fact non-monetary restrictions that ran with the land and were covered by the special language included in the sale order and as such the bidder was in default and subject to liquidated damages as set forth in the order for sale.

The court did make a finding that the order approving the sale of the property free and clear of liens did not mean that the property was sold free of non-monetary restrictions of record that ran with the land. This finding, however, was based on the language that was included in the court's order approving the trustee's application for sale. "This is clearly evident from and consistent with the 'terms and conditions of sale' which explicitly provided, *inter alia*, that the property was being sold 'as is' and subject to 'any covenants, restrictions and easements of record.'" *Id.* at 343 (emphasis in original).

In the case at bar, the Order, which was written pursuant to 11 U.S.C. § 363(b) and (f), includes no such language as to indicate that the Property is being sold subject to any covenants, restrictions and easements. In fact, the language in the Order states: "5. The recording of a certified copy of this Order in any appropriate Registry of Deeds shall be conclusive evidence of the transfer of the Property to the Buyers free and clear of any liens, claims, charges, *interests* and encumbrances asserted against the Property." Order, p. 2 (emphasis added).

Although the bankruptcy code does not define the term "interests", there are several cases that attempt to set forth a definition. "Unfortunately, 'courts have not yet settled upon a precise **definition** of the phrase '**interest** in such property.'" *In re Lawrence*, 221 B.R. 661, 668 (Bankr.

N.D.N.Y.1998) (*quoting United Mine Workers of Am.1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581 (4th Cir.1996), *cert. denied*, 520 U.S. 1118, 117 S.Ct. 1251, 137 L.Ed.2d 332 (1997) (emphasis in original)). "One court has stated that the statute should not be interpreted so broadly that it includes anyone who has a general right to payment from the debtor and it should not be interpreted so narrowly that it only includes *in rem* **interests.**" *In re Lawrence*, 221 B.R. 661 at 668 (*quoting In re Leckie Smokeless Coal Co.*, 99 F.3d at 582)(emphasis in original). I was able to find only one case that had adopted a narrow interpretation of the definition of interests, *Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.)*, 184 B.R. 910 (Bankr.W.D.Texas 1995), and that decision was subsequently vacated.

■ The remainder of the cases support a broad definition of the term. *See In re Lawrence*, 221 B.R. 661 at 669 ("The term 'interest' is intended to refer to obligations that are connected to, or arise from, the property being sold."); *In re Lady H. Coal Company, Inc.*, 193 B.R. 233, 246 (Bankr. S.D.W.Va.1996) ("The well established rule that sales within a bankruptcy proceeding occur free and clear of any interests is founded upon the principle that good faith purchasers receive clean title to the property and that any claims against the property attach to the proceeds. Accordingly, the definition of interest has been interpreted broadly, although not limitless."); *P.K.R. Convalescent Centers, Inc. and Emporia Health Investors, L.C. v. Commonwealth of Virginia, Department of Medical Assistance Service (In re P.K.R. Convalescent Centers, Inc.)*, 189 B.R. 90, 94 (Bankr.E.D.Va.1995) ("As the plain meaning of the statute demonstrates, § 363 covers more situations than just

sales involving liens"). *See generally* 3 Collier on Bankruptcy ¶ 363.06[1], at 363–45 (Lawrence P. King ed., 15 ed. rev.1997). Since I am in agreement with the broad interpretation of the term "interest" as discussed above, I find that the Order authorized the Trustee to sell the Property free and clear of all interests, both monetary and non-monetary.

### D. *Finality*

█ The Defendant argues that as she had acquired title to the Adversely Acquired Parcel via adverse possession, this portion of the Property was not property of the estate and thus not subject to sale by the Trustee, therefore she had no obligation to object to the sale or appeal the Order. As the Motion described the Property via a three page meets and bounds description which included the entire Property and did not exclude the Adversely Acquired Parcel, however I find this argument to be without merit.

It is important to note the effect of a final sale in bankruptcy. Section 363(m) of the Code provides as follows:

> the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

As the First Circuit explained:

> It has been held that 11 U.S.C. § 363(m) reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids .... The finality and reliability of the judicial sales enhance the value of the assets sold in bankruptcy. *Tri–Cran, Inc. v. Fallon (In re Tri–Cran, Inc.),* 98 B.R. 609, 617 (Bankr.D.Mass. 1989) (citations omitted).... The effect of § 363(m) is that "when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." *Creditors Committee v. Armstrong Business Credit Corp. (In re Saco Local Devel. Corp.),* 19 B.R. 119, 121 (1st Cir. BAP 1982). *See also In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1172–73 (9th Cir.1988); *In re Sax,* 796 F.2d 994, 998 (7th Cir. 1986).

*Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.),* 895 F.2d 845, 847 (1st Cir.1990).

In *Stadium Management,* the appellants were seeking to appeal not the sale order but the orders granting motions which were related to the sale. The First Circuit found that the related motions were integral to the sale and therefore were subject to the finality rule. *Id.* at 848–9. Particularly, the court agreed with other courts which "have noted, the policies of finality and necessity of fashioning effective remedies in bankruptcy law pervade the Code and are not strictly limited to § 363." *Id.* Because the appellants had not sought a stay pending appeal and the sale was completed, the First Circuit concluded that they were "powerless to undo the sale." *Id.*

In *Sax,* a case which the First Circuit used for support in *Stadium Management,* the appellant sought to appeal a sale order on the grounds that the asset was not property of the estate and therefore could not have been sold under § 363(b). The

appellant did not seek a stay pending appeal. *In re Sax*, 796 F.2d at 998. The court stated that the appellant "misses the point. Section 363(m) does not say that the sale must be *proper* under § 363(b); it says the sale must be *authorized* under § 363(b)." *Id.* at 997 (emphasis in original). The court further stated that "it matters not whether the authorization was correct or incorrect. The point is that the proper procedures must be followed to challenge an authorization under § 363(b)." *Id.* at 997–98.

The court continued:

[The appellant] essentially has asked us to create an exception such that a stay is required to challenge a § 363(b) authorized sale except when the appellant argues that the property did not belong to the debtor's estate. To create such an exception would seriously undermine the purpose of § 363(m) and could destroy the rule altogether [. . . .] Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property. Without the degree of finality provided by the stay requirement, purchasers are likely to demand a steep discount for investing in property.

*Id.* at 998.

In this case, I was satisfied and concluded in the Order that the Plaintiffs were good faith purchasers of the entire Property which included the Adversely Acquired Parcel. The Defendant actively participated in the sale and was represented by counsel. The Defendant neither sought a stay of the Order nor a stay pending appeal. Much like the losing parties in *Stadium Management* and *Sax*, the Defendant is attempting to alter the terms of the sale of the Property by belatedly claiming that the sale could not have included the Adversely Acquired Parcel. The problem

with the argument, as was the case in *Stadium Management* and *Sax*, is that it is too late. The sale contemplated selling the entire lot, the Order included the entire lot, no appeal was taken and for the reasons set forth in *Stadium Management* and *Sax*, I cannot undue that sale. In the instant case, the plaintiffs are good faith purchasers having been deemed the successful bidders at the Trustee's sale, a stay of the Order has not been obtained and thus the sale is final.

### E. Consent

■ The Plaintiffs argue that any consent requirement applicable to the Defendant under 11 U.S.C. § 363(f)(2) was satisfied by the Defendant's conduct. They contend that the Defendant, having been named in the Trustee's Motion, received notice of the sale, participated in the sale personally and through counsel, failed to object to the sale, bid at the sale to purchase the Property, requested that specific language be included in the Order and failed to appeal the Order, consented to the sale through her conduct. As support for their argument, Plaintiffs rely on *In re Elliot*, 94 B.R. 343 (E.D.Pa.1988). In *Elliot*, the District Court held "[b]ecause Citicorp admits that it received notice of the proposed sale and also admits it did not file any timely objection, the sale was authorized by § 363(f)(2)." *Id.* at 346. "In the instant matter, it is beyond dispute that the Defendant Ragosa actually participated in the proceeding, far beyond merely a failure to object after notice, (the touchstone for determination in the *Elliot* case)." Plaintiffs' Supplemental Memorandum, p. 4.

The Plaintiffs also rely on *In re James*, 203 B.R. 449 (Bankr.W.D.Mo.1997) to support their argument that the Defendant consented by her failure to object after notice. In *James*, the trustee filed a no-

tice of intent to sell property of the estate free and clear of liens, the creditor admits receiving notice and did not object or appear at the sale. *Id.* at 451. The trustee then filed an application for an order confirming the sale and again the creditor received notice and failed to object. The court entered an order confirming the sale. *Id.* at 452. The creditor subsequently filed a motion to vacate the sale. The bankruptcy court denied the creditor's motion and held "[i]n this case, section 363(f)(2) is satisfied because Roosevelt Bank failed to object to the proposed sale of the Property. By failing to object to the sale, Roosevelt Bank implicitly conveyed its consent to the sale for purposes of satisfying section 363(f)(2)." *Id.* at 453. Once again, the Plaintiffs contend that not only did the Defendant fail to object or appeal the Order but she actively participated by appearing at the sale, bidding on the Property and asking for and receiving specific language in the Order, conduct which more than satisfies the conditions set forth in the above case for establishing consent. Based upon the above discussion, I agree that the Defendant consented to the sale by her conduct. The condition of section 363(f)(2) was satisfied.

### F. *Estoppel*

█ Plaintiffs also argue that the Defendant is estopped from asserting property rights which are in contradiction of the Order.

█ In order to support a finding of estoppel, there must be

> "(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is

made; (3) and detriment to such person as a consequence of the act or omission."

*Edwards v. Sullivan and Cogliano Companies, Inc.,* 2002 WL 441968 at *2 (Mass. App.Div.2002) (*quoting Boylston Develop. Group v. 22 Boylston St. Corp.,* 412 Mass. 531, 542, 591 N.E.2d 157 (1992)).

Two bankruptcy cases which address this issue are *In re Newport Offshore, Ltd.,* 86 B.R. 325 (Bankr.D.R.I.1988) and *In re Calore Express Company, Inc.,* 288 F.3d 22 (1st Cir.2002).

In *Newport Offshore,* Judge Votolato held that the Army was estopped from objecting to the debtor's confirmation order and permanently enjoined from claiming any setoff based on its deliberate failure to object to confirmation, to raise the setoff issue at the hearing or to seek modification of the order until the plan had been substantially completed. 86 B.R. at 326. The court based its decision, in part, upon the conclusion that there would be parties who would be prejudiced if the Army was now allowed to object. *Id.* The Army's failure to act created a situation wherein the parties to the transaction reasonably relied on the finality of the court's order and this precluded the Army from claiming any right to action subsequent to the court's order. *Id.*

For example, in *Calore Express,* the debtor argued that the creditor waived its right to set off via its conduct. 288 F.3d at 27–28. In that case the First Circuit recognized that a court may imply a waiver from the creditor's conduct if the conduct fairly demonstrates the creditor's intent. *Id.* at 37–39. A waiver acts as a forfeiture of the rights of the waiving party. Additionally the court noted that although a creditor may generally rescind the waiver, when "another party to the proceedings has relied on the waiver to its detriment, the court may invoke estoppel and rule

that the waiver has become irrevocable." *Id.* at 38 (*citing In re Metro. Int'l, Inc.,* 616 F.2d 83, 86 (3rd Cir.1980); *Chassen v. United States,* 207 F.2d 83 (2nd Cir.1953)). The court further stated that a creditor's failure to object to the court's orders by the established objection date could conceivably be construed as waiver. *Id.* at 40–41. Finally, the court addressed the issue of whether silence amounts to waiver and concluded that based on an inquiry of all of the facts, there are indeed times when silence constitutes waiver. *Id.*

In the present case, the Defendant deliberately failed to object throughout the sale proceedings in which she was an active participant. Her conduct induced the other parties to the transaction to reasonably rely on the finality of the proceedings and thus precludes her from claiming any right to the property subsequent to the entry of the Order. The Defendant's conduct clearly demonstrated her intent to bid on the entire Property and pay for the purchase of the entire Property had she been deemed the successful bidder. Based on an inquiry on all of the facts of the case, I hold that the Defendant's actions do constitute a waiver of her rights to object to the sale subsequent to the transfer of the property to the Plaintiffs.

The Plaintiffs relied on the Defendant's waiver in bidding on the entire Property and they were deemed the successful bidder. Based on this waiver, they paid their final bid price to the Trustee and took possession of the Property. It would be detrimental to them for lose part of what they paid for based on the Defendant's failure to act. As such, all of the elements of estoppel are satisfied and I am ruling

that the Defendant's waiver has become irrevocable.[2]

## IV. *Conclusion*

Because the Plaintiffs have shown that there is no genuine issue as to any material fact and they are entitled to a judgment as a matter of law, Fed.R.Civ.P. 56, I will enter a separate order granting the Motion of the Plaintiffs, Robert and Joan Canzano as they are Trustees of the J & B Realty Trust for Summary Judgment or in the Alternative Judgment on the Pleadings Pursuant to Bankruptcy Rule 7056 and F.R.C.P. Rule 56 and an order denying the Motion of Defendant, Mary M. Ragosa for Summary Judgment.

---

2. Defendant offered no support for her argument that if estoppel was applicable in this instance it would only be applicable to the Land Court Action because it is a subsequent proceeding. Because I find the present action to be a subsequent proceeding, I find no merit to the Defendant's argument and need not address the same.